UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTRETTA LATASHA COOPER,

                              Plaintiff,         Case # 18-CV-139-FPG

v.                                                           DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## INTRODUCTION

Plaintiff Antretta Latasha Cooper brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 13. For the reasons that follow, the Commissioner's motion is DENIED, Cooper's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

In March 2014, Cooper protectively applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[1] 192, 194. She alleged disability since August 30, 2012 due to carpal tunnel syndrome and high blood pressure. Tr. 210. On May 9, 2016, Cooper and a vocational expert ("VE") testified at a video hearing before Administrative Law Judge Dale Black-

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

1

Pennington ("the ALJ"). Tr. 10. On August 19, 2016, the ALJ issued a decision finding that Cooper was not disabled. Tr. 10-19. On November 30, 2017, the Appeals Council denied Cooper's request for review. Tr. 1-3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*Id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See Id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Cooper's claim for benefits under the process described above. At step one, the ALJ found that Cooper had not engaged in substantial gainful activity since the alleged onset date. Tr. 12. At step two, the ALJ found that Cooper has the following severe impairments: carpal tunnel syndrome, hypertension, and diabetes. Tr. 12. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 14.

Next, the ALJ determined that Cooper retains the RFC to perform medium work[2] with additional limitations. Tr. 14. Specifically, the ALJ found that Cooper can frequently—but not continuously—handle or finger; would be off-task twenty minutes in an eight-hour workday, in addition to regularly scheduled breaks; and will have up to one unscheduled monthly absence from the workplace. Tr. 14.

At step four, the ALJ found that Cooper cannot perform her past relevant work. Tr. 18. At step five, the ALJ relied on the VE's testimony and found that Cooper can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 18-19. Specifically, the VE testified that Cooper can work as a cleaner (housekeeping), laundry worker, or kitchen helper. *Id.* Accordingly, the ALJ concluded that Cooper was not disabled. Tr. 19.

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the SSA] determine[s] that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

4

## II. Analysis

Cooper argues that remand is required on three grounds. However, because the Court concludes that remand is required on one of the grounds that Cooper raises, it need not address her remaining arguments. Specifically, Cooper contends that the ALJ failed to adequately develop the record when he did not obtain updated opinions from treating physicians Dr. Christine Cameron and Dr. Paul Paterson. ECF No. 9-1 at 9-15. The Court agrees.

### a. Facts

Cooper has for years complained of, and been treated for, pain and numbness in her hands and wrists. In March 2013, she was referred to Dr. Paterson, an orthopedic surgeon, based on her complaints. Tr. 316-18. Dr. Paterson diagnosed Cooper with carpal tunnel syndrome. Tr. 317. In June 2013, Dr. Paterson performed a left endoscopic carpal tunnel release on Cooper, and in April 2014, he performed right carpal tunnel, trigger thumb, and first dorsal compartment releases. Tr. 311, 344. Shortly after the later surgery, Dr. Paterson completed a RFC Questionnaire. Tr. 340-41. As is relevant here, he opined that, because of her April 2014 surgery, Cooper was not physically capable of working normal employment and was, at least for two to three months, totally disabled. Tr. 340-41. At a later visit on March 31, 2016, Dr. Paterson indicated that testing showed Cooper's hand and wrist issues were improving, notwithstanding Cooper's continued complaints. Tr. 385-87. He told Cooper he had no treatment to offer her at that time. Tr. 387.

As for Dr. Cameron, Cooper met with her on February 21, 2016, complaining of hypertension and depression. Tr. 363. Cooper reported, among other things, depressed mood, difficulty concentrating, difficulty falling asleep, diminished interest, feelings of guilt, and loss of appetite. Tr. 364. It appears that Cooper's depression manifested most recently in Fall 2015, after the passing of her mother. Tr. 364, 392. Dr. Cameron prescribed Zoloft. Tr. 368.

5

On April 8, 2016, Dr. Cameron completed a RFC Questionnaire. Tr. 389-90. She diagnosed Cooper with severe depression. Tr. 389. Dr. Cameron opined that Cooper's depression would constantly interfere with her ability to perform simple work-related tasks and would cause Cooper to be absent from work more than four times per month. Tr. 389-90. At Cooper's hearing, VE testimony established that a person cannot sustain normal employment with that many absences per month. Tr. 66-67.

At the hearing, the ALJ raised evidentiary issues with respect to Dr. Paterson and Dr. Cameron. As to the former, he noted that Dr. Paterson's RFC assessment was from 2014 "around the time of the surgery on the right hand." Tr. 71. He requested an updated RFC assessment or medical source statement from Dr. Paterson. Tr. 71-72. As to the latter, the ALJ noted that Cooper was now claiming that she was suffering from depression—a condition that she had not previously raised in her applications. Tr. 72, 210, 213. The ALJ therefore ordered a consultative psychiatric evaluation for Cooper, and he further requested a letter from Dr. Cameron clarifying the basis for her opinion that Cooper would be absent four times per month. Tr. 72. The ALJ stated:

> I also want a letter of clarification from Dr. Cameron as to, what's the basis for the absent four times per month, since we didn't have any psych allegations and there wasn't any indication that pain would be so limiting that the individual would have to stay home. I don't know what the basis of that is, and the med's not consistent with that at all.

Tr. 72. The ALJ held the record open and gave Cooper's counsel ten days to obtain the requested documents. Tr. 72. At that time, Cooper was represented by the firm "Myler Disability."[3] Tr. 97, 154.

The crux of this case concerns the procedural history after the hearing. In a letter dated May 20, 2016, Priscilla Gutierrez, a case manager with Myler Disability, notified the ALJ that the

---
[3] Cooper has since retained new counsel. *See* Tr. 191.

firm had not yet obtained the documents from Dr. Cameron and Dr. Paterson. Tr. 288. She requested a two-week extension to submit that documentation. Tr. 288. The record does not disclose whether the ALJ acted on this request.

On May 23, 2016, the ALJ sent a letter to Myler Disability containing the report from the consultative psychiatric evaluation that he had ordered at the hearing. Tr. 290-91, 391-97.

In a letter dated June 3, 2016, Gutierrez notified the ALJ that Myler Disability did "not have any response to the proffered results" of the consultative evaluation. Tr. 297. She then stated, "We request that the post hearing development stage of this claim be closed and a decision made at your earliest convenience." Tr. 297.

Nevertheless, on July 5, 2016, the ALJ sent Cooper and Myler Disability a Notice of Hearing, stating that a supplemental hearing had been scheduled for August 18, 2016. Tr. 161-66. The same day, Bradford Myler, Cooper's claim representative, sent a letter to the ALJ. He told the ALJ:

> This letter is in response to your request for the claimant to either accept or reject a [Video Teleconferencing] hearing.
>
> I am writing on Antretta Cooper's behalf to accept the VTC hearing option. Please disregard any previous correspondence rejecting the VTC hearing.

Tr. 302.

On July 18, 2016, the agency also received Cooper's "Acknowledgement of Receipt" of the Notice of Hearing. Tr. 183. Cooper indicated that she would "be present at the time and place shown on the Notice of Hearing." Tr. 183.

In a letter dated August 9, 2016, another case manager with Myler Disability sent the ALJ a medical record of an August 1, 2016 office visit between Dr. Cameron and Cooper. Tr. 399-405. The visit notes indicate that Cooper's depression was "[h]ighly uncontrolled" and had not

7

responded to treatment. Tr. 400. It appears that this document was admitted into the record. Tr. 24.

On August 10, 2016, case manager Gutierrez spoke with a person at the hearing office. She was informed that:

> [I]n preparing for the hearing, the [ALJ] reviewed the letter of June 3rd wherein you indicated that you did not have any objections to the post hearing development and asked that the case be closed and a decision be made at the earliest convenience. The Judge found not [sic] need to gather additional testimony and is prepared to make that decision per your request. The hearing scheduled for August 18 has been cancelled.

Tr. 303.

On August 19, 2016, the ALJ issued his decision denying Cooper's claim. Tr. 19. He gave Dr. Paterson's RFC assessment "some weight," particularly his opinion that Cooper would be absent once per month, but noted that the other limitations that Dr. Paterson identified only reflected Cooper's condition immediately after her surgery. Tr. 17. The ALJ afforded Dr. Cameron's opinion significant weight, except that he discounted Dr. Cameron's opinion that Cooper would be absent four times per month. Tr. 17. The ALJ found that such opinion was not consistent with the clinical findings from the consultative evaluation or with Cooper's testimony about her daily activities. Tr. 13, 14, 17. In reaching this conclusion, however, the ALJ did not reference Cooper's August 1, 2016 office visit with Dr. Cameron.

b. Discussion

The Court resolves this case in Cooper's favor based on the ALJ's duty to develop the record. Because Social Security proceedings are inquisitorial rather than adversarial, *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000), "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moron v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation

marks and citation omitted). As part of this duty, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at 111. Therefore, under the applicable regulations, before making a disability determination, the ALJ must develop a claimant's complete medical history. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal citation omitted); *see also Mauzy v. Colvin*, No. 5:12-cv-866, 2014 WL 582246, at *5 (N.D.N.Y. Feb. 13, 2014) ("[A]dministrative law judges, as fact finders, may not automatically rely on [the] absence of probative evidence 'without making an affirmative effort to fill any gaps in the record.'") (internal citation omitted). "The duty to develop the record is particularly important where an applicant alleges [she] is suffering from a mental illness[]," and an ALJ must "seek additional evidence or clarification where the documentation from a claimant's treating physician . . . is inadequate . . . to determine whether the claimant is disabled." *Velez v. Colvin*, No. 14 Civ. 3084, 2017 WL 1831103, at *15 (S.D.N.Y. May 5, 2017) (internal quotation marks and brackets omitted).

Importantly, the ALJ bears this affirmative duty "even when the claimant is represented by counsel." *Sotososa v. Colvin*, No. 15-CV-854, 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016). Consequently, this Court has held that, where there is a gap in the record, an ALJ cannot satisfy his duty to develop the record merely by requesting that claimant's counsel obtain the missing evidence. *See id.* (collecting cases). The ALJ must make some additional effort beyond that request, like following up with counsel or obtaining the missing records himself. *See id.*

This is consistent with an unpublished decision by the Second Circuit. In *Jordan v. Commissioner of Social Security*, 142 F. App'x 542 (2d Cir. 2005) (summary order), the court held that an ALJ fulfilled his duty to develop the record. *See Jordan*, 142 F. App'x at 543. The court stated:

> Although the ALJ did not contact or obtain records from . . . [the] treating physician whom [the claimant] mentioned at his hearing: [i] [claimant's] counsel volunteered to secure [the physician's] records; [ii] the ALJ kept the record open to allow counsel to do so, and later contacted counsel to remind him that no evidence had been received and that a decision would be made on the existing record unless such evidence was timely submitted; [iii] counsel subsequently contacted the Social Security Administration to advise it that [claimant] had "nothing further to add" to the record; and [iv] [the claimant] did not request the ALJ's assistance in contacting or securing evidence from [the physician]. Under these circumstances, we cannot say that the ALJ failed to discharge his duty to develop the record.

*Id.* Thus, in *Jordan*, the Second Circuit determined that the ALJ satisfied his duty to develop the record because, "even though the ALJ[] relied on counsel to obtain missing evidence, [he] also took independent steps to complete the record." *Sotososa*, 2016 WL 6517788, at *4.

Following the logic of these cases, the Court concludes that the ALJ failed to adequately develop the record. At the hearing, the ALJ identified gaps in the record concerning Dr. Paterson's and Dr. Cameron's opinions. Tr. 71-72. The fact that the ALJ himself requested additional documentation indicates that such materials were relevant to his determination. *See Kennedy v. Comm'r of Social Sec.*, No. 17-CV-908, 2019 WL 988889, at *3 (W.D.N.Y. Mar. 1, 2019) ("The ALJ himself had determined that such records were pertinent to his determination on plaintiff's claims when he kept the record open and requested these records . . . following the hearing."). In particular, clarification from Dr. Cameron regarding her opinion on Cooper's depression would have been useful, as Dr. Cameron essentially suggested that Cooper would be unable to work. Dr. Cameron's views could provide important insight into Cooper's limitations because she was actively treating Cooper's depression and there were otherwise only a few scattered pieces of medical evidence, along with the consultative evaluation, to illuminate the severity of Cooper's symptoms. *See Velez*, 2017 WL 1831103, at *15; *Musclow v. Berryhill*, No. 17-CV-6001, 2018 WL 2041591, at *4 (W.D.N.Y. May 2, 2018) (stating that an ALJ may be required to "recontact a

treating physician to clarify his or her opinion where it contains conflict or ambiguity that must be resolved [or] the report does not contain all the necessary information").

Accordingly, the ALJ had a duty to develop the record with respect to the materials he requested. And, as discussed above, the ALJ could not and did not fulfill this duty simply by requesting that counsel obtain the materials. *See Sotososa*, 2016 WL 6517788, at *4. If that were all that occurred in this case, remand would be certainly be appropriate. *See id.*

But there is arguably a distinguishing feature presented here: case manager Gutierrez notified the ALJ that Cooper wished to close the record. That fact nudges this case closer to the facts in *Jordan*. But, in the Court's view, it is not enough to justify the ALJ's actions. In *Jordan*, the ALJ followed up on his initial request by contacting counsel and reminding him of the outstanding request, and claimant's counsel subsequently advised the ALJ that he had "nothing further to add." *Jordan*, 142 F. App'x at 543. By contrast, here the ALJ made no effort to follow up on his request. The need to do so was more acute given the confusing, conflicting statements sent by Cooper's representative and his agents: on June 3, Gutierrez indicated that Cooper did not intend to respond to the results of the consultative evaluation and that the record should be closed; but in July, Cooper and her counsel accepted a supplemental hearing, and in early August, another case manager submitted additional medical records to the ALJ. Those later actions taken by Cooper, her counsel, and the other case manager are inconsistent with the first case manager's statement that the record should be closed. Had the ALJ followed up on his initial request, the situation might have been clarified. Instead, the ALJ chose to accept the case manager's representation—to the apparent exclusion of all contrary representations and actions by Cooper and her representative—and closed the record without the evidence he himself had requested.

Under these circumstances, the ALJ failed to adequately develop the record. Remand to the Commissioner is therefore required. *See Kennedy*, 2019 WL 988889, at *4.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: April 29, 2019
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court